[No. 10871-6-III. Division Three. October 4, 1990.]

WILLIAM F. DROLLINGER, ET AL, *Appellants*, v. SAFECO INSURANCE COMPANY OF AMERICA, *Respondent.*

*Joseph A. Blumel III* and *Backman, Blumel & Reed,* for appellants.

*C. Eugene Huppin, Patrick F. Delfino,* and *Huppin, Ewing & Anderson, P.S.,* for respondent.

GREEN, A.C.J.—This is a declaratory judgment action to determine coverage under an automobile policy issued by Safeco Insurance Company of America to William F. and Christine E. Drollinger. Both parties moved for summary judgment. Finding no coverage, the court granted Safeco's motion and dismissed the action with prejudice. The Drollingers appeal. We affirm.

While on duty October 1, 1987, Spokane Deputy Sheriff Drollinger was severely injured when the patrol car he was driving was struck by a truck driven by Brian Brown. In addition to filing suit against the driver and the owner of the vehicle, the Drollingers brought this action against their insurer, Safeco, based upon their underinsured motorist coverage. Safeco denied coverage on the basis of the following policy exclusion:

> A. We do not provide Underinsured Motorists Coverage for bodily injury sustained by any person:
> 1. While occupying any motor vehicle, . . . owned by, *furnished or available for regular use* by you or any family member which is not insured for this coverage under this policy.

(Italics ours.) The property damage and personal injury exclusions contained similar language.

At the summary judgment hearing, the Drollingers argued the exclusion did not apply for two reasons. First, the use of the term "furnished" in the exclusion is not synonymous with the statutory term "available" and therefore should be stricken.[1] Alternatively, they reason even if the car driven by Mr. Drollinger was furnished by the County, it was not "available" to him; consequently, the exclusion should not apply. Second, they argue the car was not available for his "regular use" since he did not have the authority to decide which of the 22 marked patrol cars he would drive and the car's use was limited to his duties as a sheriff's deputy.[2] The court declined to accept these arguments and granted summary judgment for Safeco. The Drollingers appeal.

---

[1]The underinsured motorist statute permits an exclusion for persons "operating or occupying a motor vehicle owned or *available for the regular use* by the named insured . . . which is not insured under the liability coverage of the policy." (Italics ours.) RCW 48.22.030(2).

[2]The Drollingers supplied the court with an affidavit from the sheriff's department indicating the officers were randomly assigned 1 of the 22 county vehicles and its use was restricted to business purposes.

The sole issue is whether the court erred in concluding the vehicle driven by Mr. Drollinger was furnished or available for his regular use, thereby excluding coverage.

 As with other contracts, the interpretation of an insurance policy is one of law. *McInturff v. Dairyland Ins. Co.*, 56 Wn. App. 773, 775, 785 P.2d 843 (1990). Exclusions in insurance polices are strictly construed against the insurer and coverage will not be excluded unless the policy does so in clear language. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68–69, 659 P.2d 509 (1983), *modified on other grounds*, 101 Wn.2d 830, 683 P.2d 186 (1984). Exclusions which are spelled out in clear, unmistakable language and do not alter the insurer's risk will be enforced unless against public policy. *Brown v. United Pac. Ins. Co.*, 42 Wn. App. 503, 506, 711 P.2d 1105 (1986).

First, the Drollingers contend that since the legislative history reflects the Legislature considered the term "furnished" and then omitted it from the underinsured motorist statute as enacted, it should be stricken from the policy. Thus, only vehicle "available" for regular use should be excluded. We disagree.

 When it is not clear from the statute or legislative history whether an interpretation is correct, the interpretation which best advances the objects and purposes of the legislation is the one which should be adopted. *Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1*, 112 Wn.2d 1, 9, 771 P.2d 701 (1989). Addressing a similar exclusion for automobiles "owned by or furnished for regular use", the court in *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985) (citing *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 359, 517 P.2d 966 (1974)), stated:

> The purposes of these clauses have been described as twofold: (1) to prevent an insured from receiving coverage on all household cars or another uninsured car of the insured by merely purchasing a single policy, and (2) to provide coverage to the insured when engaged in the *infrequent* use of nonowned vehicles.

(Italics ours.) Here, Mr. Drollinger stated he used one of the county cars every day unless given a desk assignment.

Thus, he was not engaged in the *infrequent* use of a non-owned vehicle at the time of the accident. We conclude the use of the word "furnished" in this context substantially complies with the intent of the statute.

Alternatively, the Drollingers contend county vehicles were not "available" as the word is defined in *Interinsurance Exch. v. Smith,* 148 Cal. App. 3d 1128, 1137, 196 Cal. Rptr. 456 (1983). In *Interinsurance,* the court stated "furnished" suggests instances when an automobile is actually utilized, whereas "available" requires the potential use of the automobile be, to a substantial degree, under the control of the insured. They do not dispute Mr. Drollinger was furnished with a patrol car, but since he had to obtain permission to use the particular car, it was not "available" to him. We do not find permission to use a particular car to be a prerequisite to the determination of availability.

Our courts have not construed the terms "furnished" or "available". However, *Webster's Third New International Dictionary* 923, 150 (1969) defines furnish "to provide or supply with what is needed, useful, or desirable" and available as "capable of use . . . that is accessible or may be obtained". *Random House Dictionary* 777, 142 (2d ed. 1987) contains essentially the same definitions: furnish "to supply" and available as "suitable or ready for use". Under these definitions, it is evident Mr. Drollinger was furnished with or had available to him a patrol car.

The Drollingers also argue excluding employer–owned cars leaves an insured, as here, unprotected. We disagree. In *Brown v. United Pac. Ins. Co., supra* at 507, the court held these clauses in no way affect the legislative policy of protecting innocent victims of underinsured vehicles. In this case, the Drollingers recovered a portion of their damages from both the driver and the owner of the other car. Mr. Drollinger was also covered by workers' compensation. Thus, the exclusion did not leave the Drollingers unprotected. As noted in *Abbott v. General Accident Group,* 39 Wn. App. 263, 270, 693 P.2d 130 (1984), *review denied,* 103 Wn.2d 1027 (1985), Mr. Drollinger can always negotiate

388

with his insurer to delete the exclusion from his policy. Insofar as an employer fails to provide adequate coverage to an employee, that is a matter that should be addressed as between employer and employee.

Last, the Drollingers contend the patrol car was not available for "regular use." They urge this court to adopt the five criteria for defining regular use contained in Justice Dore's dissent in *Grange Ins. Ass'n.*[3]

Since these criteria were not adopted in the majority opinion, we decline to do so here. It is the fact of regular use and not the purpose of that use which is significant. *Westhaver v. Hawaiian Ins. & Guar. Co.*, 15 Wn. App. 406, 408, 549 P.2d 507 (1976) (employer–furnished van for business purposes only came within liability exclusion of non-owned vehicle); *see also Eddy v. Fidelity & Guar. Ins. Underwriters, Inc.*, 113 Wn.2d 168, 776 P.2d 966 (1989) (an employer–furnished vehicle came within the policy exclusion since it was being used for business purposes although in violation of a company rule of no alcohol); *Dairyland Ins. Co. v. Ward, supra* (use was not regular because the son owned his own vehicle and his use of father's vehicle was infrequent); *Abbott v. General Accident Group, supra* (employer–furnished tractor trailer regularly used in employment came within regular use exclusion).

■ Although the Drollingers acknowledge one of the patrol cars was used by him almost daily, they argue since he was assigned to one of a fleet of cars, the use of one particular car was irregular. This argument must be rejected; it is the fact of regular use that is dispositive. *Westhaver*, at 408. We find persuasive the rationale in *Galvin v. Amica Mut. Ins. Co.*, 11 Mass. App. 457, 417 N.E.2d 34 (1981). There, the court rejected a similar argument and held an exclusion of vehicles "owned or regularly used" applied to

---

[3]The criteria are (1) frequency of use, (2) length of use, (3) whether the use was regular or special on the day of the accident, (4) whether permission was needed, and (5) restrictions, if any, on the use of the vehicle. *Grange Ins. Ass'n*, at 716.

an officer who was injured in a collision while driving 1 of 12 police vehicles.

Moreover, to interpret regular use to exclude the patrol car violates the purpose of the exclusion by significantly increasing the risk to Safeco without any corresponding increase in premiums. *Grange Ins. Ass'n,* at 712–13. The daily use of a patrol vehicle, often in risky driving situations, substantially increases the risks of accidents. Consequently, we find the purpose behind the statutory exclusion is met and the court did not err in finding the policy excluded coverage.

Affirmed.

THOMPSON and SHIELDS, JJ., concur.

Review denied at 116 Wn.2d 1003 (1991).