[No. 22874-6-III.   Division Three.   May 24, 2005.]

Dennis Nelson et al., *Respondents*, v. Mutual of Enumclaw, *Petitioner*.

---

*Brad E. Smith* (of *Huppin Ewing Anderson & Paul, P.S.*), for petitioner.

*Patrick R. Acres*, for respondents.

¶1 KURTZ, J. — Dennis and Deanna Nelson seek to recover underinsured motorist benefits under their insurance policy with Mutual of Enumclaw for injuries sustained by Ms. Nelson. At the time of the accident, Ms. Nelson was driving a vehicle loaned to her so that she could serve as a substitute mail carrier. Enumclaw filed a motion for summary judgment, contending that underinsured motorist

benefits were not available because of the operation of the "regular use" exclusion in the policy. The court denied Enumclaw's motion, concluding that there was a question as to whether Ms. Nelson's use of the vehicle fell within the exclusion. Enumclaw appeals. This court granted discretionary review. We conclude the trial court erred by denying Enumclaw's motion for summary judgment. Because the vehicle was provided to Ms. Nelson on a regular basis, the regular use exclusion of her insurance policy applied, and it excluded coverage. We reverse and dismiss.

## FACTS

¶2 The facts are undisputed. Dennis and Deanna Nelson (Ms. Nelson) seek underinsured motorist benefits under their policy with Mutual of Enumclaw for injuries sustained by Ms. Nelson as the result of an automobile accident. The vehicle that struck the Saturn was driven by an underinsured driver.

¶3 *Vehicle Use.* The vehicle accident occurred in October 2000, while Ms. Nelson worked as a substitute driver for a rural route mail carrier in Odessa, Washington. Ronald Frederick, the regular mail carrier for the route, worked as a contract carrier for the United States Postal Service. Mr. Frederick paid Ms. Nelson $60 per day to substitute for him on his route every other Saturday and during his vacations. When Ms. Nelson substituted for Mr. Frederick, she drove his Saturn. This vehicle was equipped with right-hand drive, which is necessary when driving a rural mail route.

¶4 The accident occurred when Ms. Nelson was using Mr. Frederick's Saturn to perform his route while he was on vacation. On those occasions when Ms. Nelson performed Mr. Frederick's route over a weekend, he would drop the Saturn off at Ms. Nelson's house on Friday afternoon and give her the keys.

¶5 The parties agree that the accident occurred when Ms. Nelson was using the Saturn within the scope of Mr. Frederick's permission. During the four months prior to the

accident, Ms. Nelson substituted for Mr. Frederick on 16 occasions.

¶6 *Policy Provision.* The provision of Ms. Nelson's policy with Enumclaw contained an underinsured motorist provision as follows:

We do not provide Underinsured Motorist Coverage for bodily injury or property damage sustained by any person:

A. While occupying, or when struck by any motor vehicle or trailer of any type, owned by, furnished or available for regular use by you or any family member which is not insured for this coverage under this policy.

Clerk's Papers (CP) at 29-30.

¶7 *Request for Admissions.* On October 24, 2003, Enumclaw's counsel submitted a set of requests for admissions to Ms. Nelson. Admission number 8 asked her to:

Please admit that Mr. Frederick's Saturn motor vehicle was available for your regular use when you acted as a substitute driver as a rural route mail carrier.

CP at 41. Ms. Nelson failed to respond to this request for admission and has never responded to any of these requests for admissions.

¶8 *Motion and Appeal.* In December 2003, Enumclaw filed a motion for summary judgment. This motion was denied. Although the trial court acknowledged that the facts were undisputed, the court concluded that there was a question as to whether the facts came within the exclusion under Enumclaw's policy. This court granted discretionary review.

## ANALYSIS

¶9 We review an order of summary judgment de novo, performing the same inquiry as the trial court. *Liberty Mut. Ins. Co. v. Tripp*, 144 Wn.2d 1, 10, 25 P.3d 997 (2001). A motion for summary judgment may be granted only if there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. CR 56(c).

¶10 Generally, the court must interpret the ambiguities in an insurance policy in favor of the insured. *Getz v. Progressive Specialty Ins. Co.*, 106 Wn. App. 184, 186-87, 22 P.3d 835 (2001). But if the language of an insurance policy is clear and unambiguous, those terms must be given the effect of their plain meaning by the courts. *Progressive Cas. Ins. Co. v. Jester*, 102 Wn.2d 78, 79-80, 683 P.2d 180 (1984).

¶11 The clause here is clear and unambiguous. The exclusion provides an exclusion for bodily injury or property damage when the insured's vehicle is "furnished or available for regular use by you or any family member which is not insured for this coverage under this policy." CP at 29-30.

¶12 *Operation of Regular Use Clause.* Overall, the purpose of regular use provisions "is to provide coverage for isolated use without the payment of an additional premium, but to disallow the interchangeable use of other cars which are not covered by the policy." *Grange Ins. Ass'n v. MacKenzie*, 103 Wn.2d 708, 712, 694 P.2d 1087 (1985). Specifically, the purpose of the regular use clause is to (1) prevent an insured from receiving the benefits of coverage by purchasing only one policy and (2) provide coverage to an insured when the insured is engaged in the casual or infrequent use of a nonowned vehicle. *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 359, 517 P.2d 966 (1974). Accordingly, these exclusions are enforced if clearly stated, and the nature of the insurer's risk is altered by factors not contemplated in the calculation of the premiums. *MacKenzie*, 103 Wn.2d at 712-13; *Abbott v. Gen. Accident Group*, 39 Wn. App. 263, 268, 693 P.2d 130 (1984). As a result, the critical factor is not the purpose of the use, but the frequency of the use. *MacKenzie*, 103 Wn.2d at 712.

¶13 *Frequency of Use.* Ms. Nelson first contends the term "regular use" does not apply to the situation here because her use of Mr. Frederick's vehicle was irregular. But the facts do not support her position. Ms. Nelson used the Saturn on a frequent and predictable basis.

¶14 Several of these cases involve the use of a vehicle in the employment context. In *Abbott*, the court enforced the exclusion to deny coverage to an insured who was using his employer's tractor, which the insured regularly used as part of his employment. *Abbott*, 39 Wn. App. at 265. In *Drollinger v. Safeco Insurance Co. of America*, 59 Wn. App. 383, 387, 797 P.2d 540 (1990), the court enforced the exclusion to deny coverage to an insured, who daily used one of a number of county patrol vehicles. The court stated: "it is the fact of regular use that is dispositive." *Id.* at 388. In both cases, the court denied coverage because the insurer's risk was increased by the insured's use of his employer's vehicle. *Drollinger*, 59 Wn. App. at 389; *Abbott*, 39 Wn. App. at 268.

¶15 Several cases, including *MacKenzie*[1] and *Progressive Northwestern Insurance Co. v. Hoverter*, 65 Wn. App. 872, 829 P.2d 783 (1992), examine the regular use exclusion in the context of the loan of a vehicle by a member of the insured's family. In both of these cases, the courts upheld the enforcement of the regular use exclusion. In *MacKenzie*, the court concluded that driving a loaned vehicle at least four to six times in a month constituted regular use where the driver was the exclusive driver contemplated by the disabled owner. *MacKenzie*, 103 Wn.2d at 712. In *Hoverter*, a vehicle was furnished for or available for regular use by family members whenever one of their cars was in the shop. *Hoverter*, 65 Wn. App. at 879.

¶16 Here, Ms. Nelson used Mr. Frederick's Saturn 16 times in a four-month period. While she was not the exclusive driver of the vehicle, her use of the vehicle was frequent, consisting of every other Saturday and those days Mr. Frederick took a vacation. More importantly, Ms. Nelson's use of the Saturn increased Enumclaw's risk without payment of additional premiums.

¶17 *Effect of Permission by Vehicle Owner.* Ms. Nelson next argues that the general use exclusion does not apply

[1] *MacKenzie*, 103 Wn.2d 708.

when the use of the loaned vehicle is at the discretion of the principal.

¶18 First, Ms. Nelson cites no authority to support this argument. Second, the cases, most notably *MacKenzie*, require an inquiry into the frequency of the use, not questions as to permission. Also, *Drollinger* and *Abbott* indicate that permission is not a prerequisite to a finding of regular use.

¶19 Finally, even though Ms. Nelson required Mr. Frederick's permission to use the Saturn, her use of the vehicle was regular and frequent, and for a specific ongoing purpose, not an isolated endeavor. In short, Ms. Nelson's use of the Saturn altered Enumclaw's risk on her policy by factors not contemplated when the premiums on her policy were calculated.

¶20 *Question of Fact.* Lastly, Ms. Nelson contends the court's denial of Enumclaw's motion was proper because there are questions of fact as to whether her use was regular and whether Mr. Frederick's permission was required for her to drive the loaned vehicle.

¶21 Remand for a trial here is not required. In this case, the regular use clause is clear and unambiguous and the facts are undisputed; accordingly, the question as to coverage is an issue of law. *See State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

¶22 Finally, Enumclaw raises an evidentiary question that need not be addressed here. Enumclaw contends that Ms. Nelson admitted that her use of Mr. Frederick's vehicle was regular when she failed to respond to Enumclaw's request for admissions. In view of our disposition, we need not address this issue.

¶23 Reversed and dismissed.

SWEENEY, A.C.J., and BROWN, J., concur.